Case of the day. Case number 3-170386. People of the State of Illinois. Appellee by Stephanie Raymond v. Matthew Crane. Appellant by Editha Rosario Moore. Counsel, you may proceed. Oh, yes. Excuse me. For the record, since these are recorded arguments, Justice Litton is unable due to a conflict to be with us this afternoon on this panel. He is fully prepared to listen to the oral argument, has the benefits of the oral argument, and will have those when we confer in a decision on this case. Thank you. May it please the Court in opposing counsel? Good afternoon. My name is Editha Rosario Moore, representing the Defendant Appellant Matthew Crane on behalf of the Office of the State Appellant Defender. We've raised five issues in this appeal. That the State failed to prove Mr. Crane guilty beyond reasonable doubt of unlawful possession of cannabis with intent to deliver on an accountability theory, a prosecutorial misconduct claim based on three instances and three separate trial court errors. But today I want to discuss how two of the instances of the prosecutor's misconduct and two of the trial court's errors are related, which clarifies why Mr. Crane didn't receive a fair trial and why the State didn't meet its burden in proving him guilty beyond a reasonable doubt. If you forgive me, I'm a little bit under the weather, so I'm going to try to get close to the microphone here. So as to the prosecutor's misconduct, in the first instance, the prosecutor used Mr. Crane's post-arrest silence to impeach his trial testimony. This was a Doyle violation because it violated his right to post-arrest silence. The rationale behind a Doyle violation is that silence is ambiguous and may be the result of having been warned that silence is protected. Now the evidence of Mr. Crane's silence was elicited by the prosecutor. Officer Chavez testified that Officer Sleaford spoke to Mr. Crane on the scene and gave him Miranda warnings. And when the prosecutor specifically questioned Officer Sleaford, she asked if he spoke to Mr. Crane and then asked three questions which were clearly meant to elicit that Mr. Crane had been silent. She asked, at any point did you speak to Mr. Crane during this incident? He says yes. Did he give any statement to you regarding the odor of the cannabis in the room? No. Did he give any statement to you regarding the odor of the cannabis found in Mr. Weston's vehicle? Not to me, no ma'am. Did he give you any statement regarding the cannabis that was found in his own vehicle? No ma'am. So this was a clear elicitation that Mr. Crane had been silent. The evidence also showed that Officer Chavez testified that the defendant was arrested on the scene, he was handcuffed, placed in the back of a squad car, and then transported to the police station. Now, Officer Chavez testified that Mr. Crane made somewhat conflicting statements about how he knew Mr. Weston, but also that he didn't admit to anything regarding the cannabis. And then at the police station, he didn't add anything about that either. The evidence also showed that Mr. Weston had been given Miranda warnings and didn't make a statement about the cannabis. What followed was the prosecutor's argument to the jury that Mr. Crane was not credible because he testified at his jury trial, because he didn't make any statements about the cannabis on that day. She argued four instances. She first argued to the jury that when the police asked the two men if they knew anything about the drugs, they said, nope, don't know anything about it, no statement, nothing about the odor on that day. She further argued that the men were questioned and stated to the jury, Now ask yourself, if you were at a hotel and the police officer happened to find four packages of cannabis in the trunk of the car, what would your reaction be? Would it be nothing, or why would the reaction be nothing? She then specifically asserted, I heard Mr. Crane sit here and explain to you and to me that he doesn't know anything about this. He never saw that black bag. He never knew anything about it. He didn't know what happened, which, again, are all the things he never said that day. And in rebuttal, she repeated the argument that they didn't say anything to the police when they were questioned. And so it could not be clearer that the prosecutor was arguing that Mr. Crane's testimony at trial wasn't credible because he did not tell the police what he told the jury at trial. And even if this court finds that the prosecutor wasn't clear on whether the statements referred to were before or after Miranda rights were given, under Illinois law, it's an evidentiary error to impeach a defendant with his silence either before and after Miranda warnings. The state did not address this argument in its briefs. As to the second instance, the prosecutor asked Officer Chavez if Mr. Crane acted like a normal, innocent member of the public. Now, here's the context. The prosecutor asked Officer Chavez how Mr. Crane seemed on the scene, and he said he seemed intoxicated. She asked why. She said he seemed nervous. She then asked the leading question, do you sometimes encounter people who are nervous specifically because they're talking to the police? And he says yes. She then asks, did the defendant act like a normal, innocent member of the public? And Officer Chavez responded, a little different than a normal member of the public. Now, the use of the words normal and innocent by the prosecutor were improper implications to the jury that Mr. Crane was acting guilty based on his demeanor. So while Officer Chavez could testify that Mr. Crane seemed nervous or seemed intoxicated, he couldn't interpret that for the jury. Even the state's argument in its response indicates that guilt was presumed by the prosecutor's question. They argued, quote, it was completely permissible for Chavez to testify to defendant's behavior versus a civilian who was not engaging in illegal activity. That question presumes guilt. Now, these two instances of prosecutorial misconduct are related to two of the trial court errors that we raised. The first of those issues is actually the third issue in the brief, which was that it was improper for the trial court to admit Mr. Crane's mugshot into evidence. But it was the prosecutor who was at the heart of this issue because she's the one who introduced it. Now, she asked Officer Chavez to identify Mr. Crane in court, and he did. She then asked him to identify Mr. Crane from his booking photo because Officer Chavez took it. At that point, defense counsel objected, and this was error because there was no need for it. The defendant's identity wasn't at issue, but the court allowed it over defense objection. The judge further made incorrect comments to the jury. First, he told the jury that it was a booking photo, so if it wasn't clear before, it was definitely clear now. And then he incorrectly informed the jury that it was just like the neutral charging instrument. Of course, it's not. It's evidence. It shows the defendant's appearance at the time of his arrest. The prosecutor's purpose was clear. She asked the jury to pass it around so that they could see what the defendant looked like when he was arrested. Shortly after that is when she asked Officer Chavez whether he acted like a normal, innocent member of the public. And so the apparent reason for the photo is to prejudice Mr. Crane from his appearance at the time of his arrest. It was improper, and the court shouldn't have allowed it. And the other trial court error that is related to the prosecutor's misconduct is the last issue that we raised, that the trial court did not exercise discretion in refusing to let the jury see the rental agreement that had been admitted into evidence because the judge erroneously believed that it hadn't been admitted. Now, the prosecutor is the one who presented it. It was her evidence. And she argued to the court, when they were reviewing the evidence that should go back into deliberations, that it shouldn't go back because it was irrelevant. And it was at that point that the judge said, well, I'm not sure. Was it even admitted? I don't think it was admitted. And the prosecutor said, well, there you go then. Well, of course, it had been admitted. The record confirms that.  Not only did it show that Ransy Weston alone had rented the car where the cannabis was found, but it was misread by the prosecutor because during cross-examination of Weston, the prosecutor asked why Ransy would choose to rent a car to go back instead of fly when it cost $92 a day. And he corrected her and said, well, no, it's actually closer to $15 a day, which is why I decided to rent it. If you look at the agreement, it's actually closer to $13 a day. Nonetheless, the prosecutor still argued to the jury that it didn't make sense that Weston said it was more cost-effective to drive home, in part because of cost. And so in this context, the prosecutor didn't correct the judge, who ultimately did not give proper consideration, and he didn't let the jury see evidence. And it was prejudicial because it actually bolstered the defense case. And so these two instances of the prosecutor's misconduct are related because it's indicative of her overall approach to the case, which was to ensure Crane's conviction no matter the cost. Now, the prosecutorial misconduct issue was unpreserved, so we argued plain error under both prongs because the evidence was closely balanced, but we also argued second-pronged plain error because the prosecutor's misconduct in this case was pervasive. You're asking for time-reversible error under a plain error analysis? Yes. Often? No. The prosecutor's misconduct concerned the same general scene. So you're claiming it's unpreserved error. Unpreserved error. That's why it's plain. Yes. And you're asking for it. You're saying it would require reversal. Yes, it would require reversal. That's right, and in this case, it's both or either. So as to the second-pronged plain error, it concerned the same general scene. The prosecutor was using improper inferences in lieu of direct evidence in a very circumstantial case. I think it's also worth noting that the prosecutor tried to keep out Mr. Weston's testimony. That was discussed in a footnote in the briefing. But Mr. Weston, of course, testified that he alone took responsibility for the cannabis, and he definitively denied that Mr. Crane had anything to do with the offense. The prosecutor's errors were overt, and they concerned fundamental principles of law. It's fundamental that the state shouldn't argue that a defendant's silence means he's guilty or ask a witness if he thinks the defendant is innocent. And the prosecutor was a part of the two errors that we reviewed, showing the defendant's mugshot and failing to tell the judge that the court had admitted the evidence that the prosecutor herself presented. And so if there are no questions, Mr. Crane asked this Court to either reduce his conviction to unlawful possession of 3.6 grams of cannabis or alternatively reverse his conviction based on either prosecutorial misconduct or the trial court errors and remand for further proceedings. All right. I don't think there are any questions. No, thank you. And you'll have time to reply. Thank you. Counsel, you may respond. May I please report, Your Honors, Counsel? My name is Stephanie Ramey. I'll be representing the people of the state of Illinois. Unfortunately, my voice is loud. You're opposing counsel. I'm getting nervous here. We're all moving back. I'm not contagious. I am arguing this brief on behalf of Chelsea Kasten. I was not the author of this brief. She's no longer with the office. In response to defendants' arguments, people would first argue that it's forfeited, obviously, under plain airs. It was not preserved at trial, and it was not objected to. Regarding his posterous silent statements, it's the people's position that the prosecutor was speaking to. The statements that defendant did make to the officer and what he said before he was merandized. Regarding the statements that he made, or regarding her speaking to his credibility, that was her speaking to his credibility, which is proper. Would you like to pour yourself a glass of water? Yeah, if I could just. Yeah, not to bring the bottle to the bench, but for the podium. Oh, we use your water in the glass. Thank you. Thank you. I'm speaking to her discussion of his statements during her closing argument. Her statements in her closing argument were in response to defense counsel's statements about his closing argument. So it's the people's position that the defense counsel elicited her responses regarding his statements. Regarding her questioning of defendant's behavior as being an innocent member of society, she was asking about defendant's behavior during the questioning. This was a wellness call. The police were called to the hotel for a wellness check because the two men had not checked out two and a half hours after they were supposed to. So they got there, and the two men were seen in the field searching. Crawling. Almost crawling, searching. And so in response to that, he started questioning the defendant. When he did question the defendant, the defendant's behavior was, he was acting as if he was under the influence. So those were her questions regarding that. They were just, they were proper because they were speaking to how the defendant was acting and what made the officer suspicious of what was going on. Regarding the trial court's heirs, the mug shot, or the mug shot, it was never referred to as a mug shot, but the picture of the defendant was taken on the day of the incident. And it was, the trial court admonished the jury that this is not to be considered as evidence. This is his, this is just a picture from that day. And so the trial court. What was the purpose of that picture? To show that the defendant in that picture was the same one who was on the video and also the same one in court that day. But had he already been identified by the police officer that arrested him? You mean during his testimony, or? During the police officer testimony. There was an in-court identification, right, of the defendant? I'm not sure if that was before or after the photo. Sorry, I apologize. The trial court gave instructions regarding that photo, and that photo was not sent back within, in the jury room. Regarding, so regarding the rental agreement, defense counsel did not want that agreement in the record admitted into evidence in the first place. So it was actually admitted into evidence over his objection. And so it's the people's position that it's invited error that he claimed that he didn't want it in evidence and now claims that it was, you know, not sent back to the jury. Even if it were error, it would be harmless if it didn't affect the trial. If there are no further questions. I don't have my voice on. Counsel, you may respond. Thank you, Your Honors. Just a couple of comments on rebuttal. Directly to the last point about the defendant's mugshot, it was referred to as a booking photo, maybe not specifically a mugshot, and it was referred to by the trial court as a booking photo, which is why we chose to raise it as a trial court error, because if there was any question about it, it was certainly cleared up by the trial court's comments. And those comments were error. They said, the judge said that the photo was not evidence. It absolutely was evidence. It was introduced that way, it was admitted that way, and it was shown to the jury that way. So equating a booking photo with a charging instrument again was just wrong as a matter of law. As to the idea that it was invited error somehow, we would ask this court to alternatively consider that it was ineffective assistance of counsel. I think the argument was that it was invited error rather than agreement. Right. Okay. That was a little bit of an assumption. So we responded to that in the reply. It's not invited error just because defense counsel had asked to initially object to it. It was the state's evidence. Counsel objected to it. It ended up corroborating the defense case by the way the prosecutor used it. She misread the agreement. She thought it said, for whatever reason, that it was $92 a day, and it was actually closer to $13. And so in that context, defense counsel, just because he initially objected, it changes as the trial goes on. But even so, if this court finds that it is invited error, it is absolutely ineffective to not inform the judge first that, no, this was actually admitted because that's the proper thing to do, but then also to not want to let the jury see evidence that actually corroborates your case and strengthens both the defendant's and Mr. Weston's account. And as to the normal innocent member of the public issue, just in response to the idea that it was meant to only refer to the fact that the defendant was acting intoxicated, again, that testimony was already elicited. Officer Chavez said he seemed intoxicated. That's proper. But it doesn't mean that he's not credible, and it certainly doesn't mean he's guilty. And it's undeniable that the word innocent carries a lot of weight with the trier of fact, in this case, the jury. And to have the investigating officer testify that he wasn't acting normal in response to the question of was he acting normal and innocent carries a lot of weight and is certainly improper because that's within the province of the jury to determine his guilt. Are there other questions? No, I don't think there are. Thank you. Thank you very much, Your Honors. Thank you, Counsel Volz, for your arguments in this matter. This afternoon it will be taken under advisement and a written disposition shall issue.